IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX SPIKE, | ) | CASE NO. 1:16 CV 2855 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Alex Spike under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 9. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Spike who was 26 years old at the time of the administrative hearing,[11] graduated high school and is not married.[12] His past relevant employment history includes work as a warehouse worker, pizza baker, sandwich maker, and fast food worker.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Spike had the following impairments: chronic pancreatitis with Whipple procedure performed in 2010; affective disorder (depression); and attention deficit disorder (ADD/ADHD) (20 CFR 404.1521 *et seq*. And 416.921 *et seq*.).[14]

---

[6] ECF # 12.

[7] ECF # 17 (Commissioner's brief); ECF # 13 (Spike's brief).

[8] ECF # 17-1 (Commissioner's charts); ECF # 14 at 3 (Spike's charts).

[9] ECF # 14 at 1 (Spike's fact sheet).

[10] ECF # 20.

[11] ECF # 11, Transcript ("Tr.") at 34.

[12] *Id*. at 41.

[13] *Id*. at 61.

[14] *Id*. at 22.

The ALJ found that the claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).[15]

The vocational expert found Spike capable of his past relevant work as sandwich maker and fast food worker.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing, the ALJ determined that a significant number of jobs existed locally and nationally that Spike could perform.[17] The ALJ, therefore, found Spike not under a disability.[18]

**B.     Issues on judicial review**

Spike asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Spike presents the following issues for judicial review:

- Whether the ALJ erred by failing to find any of plaintiff's impairments severe, especially chronic pancreatitis.

---

[15] *Id.*

[16] *Id.* at 62.

[17] *Id.*

[18] *Id.* at 28.

- Whether the ALJ improperly weighed and evaluated the opinion of plaintiff's treating physician and failed to properly evaluate plaintiff's credibility.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

## Analysis

**A.  Standards of review**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

---

[19] ECF #13 at 3.

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.     Application of standards**

As noted, this matter primarily involves the ALJ's decision at Step Two that Spike does not have a severe impairment, or combination of impairments.  Spike argues that his chronic pancreatitis, which he alleges produces abdominal pain, cramping, nausea and weight loss, and also contributes to depression, was erroneously viewed as non-severe because the ALJ mischaracterized evidence favorable to Spike by focusing on his condition prior to the onset date and then finding no "significant, continuous symptoms and limitations since then."[71]

It is noted that the ALJ recognized chronic pancreatitis as one of the impairments present in this case.[72] He then set out the applicable standard for determining if an impairment may be termed severe.[73] In that regard, he noted that Spike's testimony at the

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] ECF # 13 at 11 (citing transcript).

[72] Tr. at 23.

[73] *Id*.

hearing was that his pancreatitis attacks "immobilize him such that he cannot move or breathe," and that he "is in severe pain until after the attack ends."[74] He also testified that these attacks last between 20 minutes and an hour, and that after the attack ends he experiences less pain but is still unable to move.[75]

Additional testimony at the hearing was that Spike's attacks occurred about "once per week," a frequency that he claimed would prevent his from working at least four days per month.[76] But, the ALJ noted, both Spike and his representative "generally described [Spike] as normal when he is not experiencing an attack," and further stated that "he spends seven hours on his feet each workday."[77]

In considering that testimony in light of the other evidence, the ALJ began by noting that Spike essentially stated that he has no significant work-related functional limitations except when experiencing a flare-up of his pancreatitis, an event which he Spike claims results in causes significant absence from work and or time off-task.[78] That said, the ALJ observed that at Spike's current job he "spends seven hours on his feet each workday and comfortably lifts 40-50 pounds."[79] The ALJ further noted that notwithstanding testimony

---

[74] *Id*.

[75] *Id*.

[76] *Id.*

[77] *Id*.

[78] *Id.*

[79] *Id*.

about the frequency of debilitating flare-ups, Spike has only "missed work twice due to pancreatic flares."[80]

As to the relevant medical evidence, the ALJ initially found that "the record shows quite severe symptoms and limitations in 2009-2011 resulting in multiple hospitalizations" due to pancreatitis, but also found the record "does not show significant, continuous symptoms and limitations" since the alleged onset date of September 23, 2013.[81] To that point, the ALJ states that Spike's last hospitalization for "pancreatic problems" was in June 2011, at which time Spike's abdominal symptoms were characterized as "mild."[82]

Moreover, the ALJ noted that at the last physician visit prior to the alleged onset date, December 22, 2011, the record shows that Spike was found to be recovering "quite nicely" from an August 2010 procedure.[83] The ALJ further observed that Spike was able to manage his pancreatitis without any treatment or pain medications "for almost three years, including one year after the alleged onset date," thus "strongly indicat[ing] that [Spike's] chronic pancreatitis caused no significant symptoms or limitations."[84]

In assessing the medical evidence the ALJ concluded, "the record shows no medical treatment for the claimant's alleged disabling physical impairment for nearly three years

---

[80] *Id.*

[81] *Id.* at 24.

[82] *Id.*

[83] *Id.*

[84] *Id.*

-15-

since December 2011 until approximately one year after the alleged onset date." Also, the ALJ stated, "the medical imaging and empirical studies in 2014 and 2015 showed no significant abnormalities."[85]

As to Spike's testimony, the ALJ determined that "inconsistencies" in testimony about his living arrangements and his doing "side work" for cash meant that "information provided by [Spike] generally may not be entirely reliable."[86]

The ALJ also took note and gave great weight to the opinion of the consultative examiner, Dr. Bradford, who examine Spike in February 2014 and determined that he had "no restrictions" on his activities.[87] The ALJ also gave substantial weight to the opinion of the state agency reviewing consultant, Dr. Hall, who found in February 2014 that although Spike has a medically determinable gastrointestinal impairment, that impairment was not severe.[88] Similarly, the ALJ gave substantial weight to the opinion of state agency reviewing consultant Dr. Hughes who, in May 2014, reached the same conclusion as did Dr. Hall.[89]

The ALJ also considered the medical source statement from Spike's treating physician, Dr. Chak.[90] The ALJ gave this statement "little weight," noting that Dr. Chak

---

[85] *Id.* at 25.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.*

"failed to answer most of the questions presented" on the statement form, had no clinical findings to support alleged mental limitations and was inconsistent with Spike's own testimony regarding side effects from medication.[91]

In response, Spike argues initially that the ALJ erroneously construed the medical evidence. He contends that the gastric emptying study and the endoscopy have "no bearing" in chronic pancreatitis, but were done to rule out other conditions.[92] He further asserts that the CT scan merely indicated that he was not suffering from acute pancreatitis, but was consistent with chronic pancreatitis.[93]

This case essentially turns on a proper analysis of Spike's condition after his surgery in 2010, which involved a partial resection of his pancreas.[94] Spike asserts that while he initially improved following this procedure, he returned to treating with Dr. Chak in September 2014 with symptoms of exocrine pancreatic insufficiency, malnutrition, vomiting, anxiety and depression.[95] Dr. Chak noted that Spike had developed malnutrition, and was

---

[91] *Id*.

[92] ECF # 13 at 12.

[93] *Id.*

[94] Tr. at 935.

[95] *Id*. at 1185.

experiencing chronic pain.[96] He also noted that although Spike had been doing well since the 2010 surgery, he was now experiencing fatigue, weight loss and depressed feelings.[97]

As noted above, the CT scan and gastric emptying study ordered by Dr. Chak after this September 2014 visit with Spike did show the existence of chronic pancreatitis. At a follow-up visit with Dr. Chak in February 2015, Spike reported significant abdominal pain, and continued to complain of vomiting and the inability to eat more than one meal per day, as well as complaining of constipation from Creon, which is a pancreatic enzyme replacement therapy that Spike was first prescribed in September 2014.[98]

Dr. Chak issued his medical source statement, discussed above, in March 2015. He saw Spike again in July 2015, when Spike described difficulty with pain about three or four times a week, and also stated that he experienced occasional severe abdominal pain.[99] Spike was recorded as weighing 148 pounds,[100] an amount that is significantly less than the 165 pounds he weighed in April 2011.[101] Spike was noted as having chronic abdominal pain, chronic biliary pancreatitis, pancreatic insufficiency and depression.[102]

---

[96] *Id*. at 1189-90, 1192.

[97] *Id*. at 1189.

[98] *Id*. at 1173-74, 1193.

[99] *Id*. at 1210, 1212.

[100] *Id*. at 1210.

[101] *Id*. at 748. Spike testified at the hearing that he has lost about 60 pounds since being diagnosed with chronic pancreatitis. *Id*. at 41.

[102] *Id*. at 1211.

Spike testified at the October 2015 hearing that while he was capable of performing some physical activities at work or at home when he was not experiencing an attack of pancreatitis, he was immobilized with pain when experiencing such an attack.[103] He stated that such attacks occur approximately once a week, and last for about ten minutes to an hour, with severe pain.[104]

It is noted that the ALJ's analysis of the medical chronology here does not appear to accurately characterize the evidence subsequent to the procedure in 2010. While it is true that Spike was not hospitalized since June 2011, it is not accurate to reason that the lack of an additional hospitalization and the almost three year period between visits to Dr. Chak, support a finding that Spike's pancreatitis causes no significant limitations. Moreover, both the consulting examining physician and the state agency reviewer performed their work in February 2014, or well before Dr. Chak issued his medical source statement in March 2015, and significantly before the events, detailed above, from September 2014 to the hearing date in October 2015.

Thus, although substantial evidence may well support a finding that Spike's chronic pancreatitis was not severe as of February 2014, it cannot be said that substantial evidence supports such a finding for the period thereafter. Moreover, as the above review of Dr. Chak's opinion demonstrates, substantial evidence does not support the weight given to his functional opinion.

---

[103] *Id*. at 46-49, 53.

[104] *Id*. at 50, 58.

## Conclusion

For the reasons stated above, I find that substantial weight does not support the ALJ's finding at Step Two that Spike's chronic pancreatitis was not a "severe" impairment, thus providing the asserted basis for denying benefits. Accordingly, the decision of the Commissioner is hereby reversed, and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 28, 2018                              s/ William H. Baughman, Jr.
                                                               United States Magistrate Judge